No. 74.—DANIEL TYLER, plaintiff in error, *vs.* JOHN D. GRAY, defendant in error.

[1.] When the Jury find a verdict contrary to the charge of the Court, and manifestly contrary to law, a new trial will be granted.

Assumpsit in Bibb Superior Court, and motion for a new trial. Heard and decided by Judge STARK, July Term, 1850.

This was an action instituted by John D. Gray against Daniel Tyler, for the recovery of $450 14, as compensation for the services of the plaintiff, and the hire of his negroes, upon the Monroe Railroad, for the months of November and December, 1845.

The defendant pleaded a set-off of $4953 73, as money raised for freight and passengers on the road during the same time, and received by the plaintiff.

On the trial, *Midas L. Graybill* testified, that Daniel Tyler was the owner of the Monroe Railroad in November and December, 1845; that Gray run the road during these months; that the items in plaintiff's account for services of plaintiff and negro hire, were correct—the services of Gray were worth from $125 to $150 per month, &c. Witness was employed by Gray, and knows that he (witness) paid out all the money th.t was received during the months of November and December, and that the said items in the account were not paid. In paying out

money, he was governed by Gray's orders.   The road, prior to the  month of November, was in  the  hands of  the commissioners, who sold the road, and Mr.  Whittle was their agent.   The whole receipts of the road during the months of November and December, amounted to.................................$4,356 79

Mr. Whittle turned over, to pay debts which were incurred  during his  service, the sum of...............   596 94

                                                            4,953 73

Disbursed during three months for wages,
    materials, &c. and running  the road...2,771 20
Paid R. Collins for  the  hire  of his  ne-
    groes  for the same months.............   662 00
J. D. Gray's negroes for  same time......  431 12
S. H. Martin's negroes for same time.....  201 53    4,165 85

                                                             787 88

In the item of $2771  20 of disbursements, are included items of expenses incurred during the time of Mr.  Whittle, equal to the amount paid over by him, and a part of the receipts of November and December were applied, by Mr. Gray's order, to the payment of  debts  contracted prior  to  the month  of November, 1845; that the hire of  Gray's negroes from the 1st September to  January, amounted to eleven  hundred and  odd dollars, and from the 1st of November to 1st January, the hire  amounted to $431 12; that all sums received during the months of November and December, were paid out  to debts legitimately due  by the  said road.   A  part  was paid to debts  contracted before Tyler got  possession of the road—none of the  money passed through Gray's hands.   Witness paid it  out as the  agent for Gray, and by his orders, to the road.   When Gray went out there was no money in hand.

*L. N. Whittle* testified, that he paid over a sum of money to be applied to the  payment of debts, contracted while he had the superintendence of the road under the commissioners, which he required to be paid to the expenses that he (Whittle) left unpaid; that by order of Tyler, he placed Gray in possession of the

road, &c. with orders to employ all necessary agents, labor, &c. to carry on the said road. The money left (by Whittle) was about enough to pay all the expenses he left unpaid—probably a little more.

The Court charged the Jury as follows : "In this case a set-off is pleaded. The Jury must look into the evidence, and see if the accounts have been proved, and if the account proven by one of the parties is larger than that proven by the other, the smaller must be deducted from the larger, and a verdict be given accordingly. The defendant is not liable for the debts contracted for the use of the road prior to his getting possession of it. The plaintiff is liable for all moneys which came to the hands of himself or his agents; for the months of November and December, subject to all payments made for expenses of these months. The money Graybill received from Whittle, being received as Tyler's agent, was of right paid by Gray towards the expenses Whittle left unpaid."

The Jury found a verdict for the plaintiff; whereupon counsel for the defendant moved the Court for a new trial, on the grounds—

1st. Because the verdict of the Jury is contrary to evidence.

2d. Because the verdict of the Jury is contrary to the charge of the Court.

The Court refused to grant the motion for a new trial; whereupon counsel for the defendant excepted.

McDonald, for plaintiff in error.

Powers and Whittle, for defendant.

*By the Court.*—Warner, J. delivering the opinion.

[1.] The motion for a new trial in this case ought to have been granted, upon the ground that the Jury found contrary to the charge of the Court, which charge, in our judgment, was in accordance with the law governing the rights of the parties—consequently the verdict is contrary to law.

Tyler *vs.* Gray.

Gray sued Tyler on an open account for $450 14. On the trial, the plaintiff proved, by one witness (Graybill) two items in the account only, amounting to the sum of $424 14. The defendant pleaded, as a set-off, an account against the plaintiff for money received by him for freight and passengers on Monroe Railroad, in the months of November and December, 1845, $4356 79; also, $596 94 for cash received—making the total amount of the defendant's account, $4953 73.

Tyler became the owner of the road in November, and was entitled to the receipts thereof for the months of November and December, 1845. The receipts of those two months amounted, according to the testimony of Graybill, to the sum of $4356 79. Whittle turned over cash to pay debts which had been incurred by the road before Tyler became the owner, $596 94—thus making the total amount received $4953 73. The disbursements made during the months of November and December, including the $596 94, turned over by Whittle to pay debts which had been contracted prior to that time, amounted to the sum of $4065 85. Now, if we deduct the total expenses of the road for the months of November and December from the amount received during the same time, there will be found a balance due Tyler, the defendant, of $887 88, *exclusive* of the plaintiff's account now sued on. Deduct the plaintiff's account as proved, there still remains $463 74 due the defendant. Graybill, the witness, appears to have been the plaintiff's cashier to receive and disburse the money made by the road, and acted under Gray's orders. The money paid over to him by Whittle was applied, by Gray's order, to the payment of debts contracted *prior* to November and December, and that all sums received during these months were paid out to debts legitimately due by the said road; but it will be remarked, that the plaintiff had no authority to order the money of Tyler to be applied to any debts due by the road before he became the owner of it in November, although the same might have been *legitimately due* by those who, in law, were bound for the payment thereof. The witness further states, *that a part of the money was paid to debts contracted before Capt. Tyler got possession of the road.* For these debts

Capt. Tyler was not liable, and if the plaintiff ordered *his* money to be appropriated to the payment of such debts, then he is liable to account to Tyler therefor. Whittle does not testify that the money turned over by him was sufficient to pay *all* the debts due by the road—that it was about enough to pay all the debts *he contracted for the road.* Graybill was the witness for the plaintiff, and being his cashier, it is a little remarkable that he cannot speak as *definitely* in regard to the amount of money paid to debts *contracted before Tyler got possession of the road,* as he does in regard to the other items of disbursement.

The Court charged the Jury, that the defendant (Tyler) was not liable for the debts contracted for the use of the road *prior* to his getting possession of it. The testimony shows, that a portion of the money which belonged to the defendant has been so appropriated, and it is to be regretted the witness does not state how much ; but the inference is very strong, that the balance of the money received, not particularly accounted for in the items of disbursement, was so appropriated. The money being so appropriated by the *orders* of the plaintiff, he is as liable to account for it as if it had actually passed through his hands. The Jury having rejected the whole of the defendant's set-off, and found a verdict for the plaintiff for four hundred and twenty-four dollars and fourteen cents, their finding is contrary to the charge of the Court, and contrary to law.

Let the judgment of the Court below be reversed.